FILED

2024 Dec-23  PM 04:50
U.S. DISTRICT COURT
N.D. OF ALABAMA

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| **DONNA WOODS,** | ) | |
| | ) | |
| **PLAINTIFF,** | ) | |
| | ) | **CASE NO.:** |
| **V.** | ) | |
| | ) | |
| **HRPO HOLDINGS, INC.** formerly | ) | **PLAINTIFF DEMANDS TRIAL** |
| **known as HP HOTEL** | ) | |
| **MANAGEMENT INC., a** | ) | **BY STRUCK JURY** |
| **corporation, and RHAGLAN** | ) | |
| **HOSPITALITY LLC** | ) | |
| | ) | |
| **DEFENDANT(S).** | ) | |

## COMPLAINT

COMES NOW, Donna Woods, and files this complaint to be answered by the Defendant in accordance with the Federal Rules of Civil Procedure.

## I.    JURISDICTION

1.    This action for injunctive relief and damages is brought under 28 U.S.C. §§ 1331, 1343(4), 2201, 2202, The jurisdiction of this Court is invoked to secure protection for and to redress the deprivation of rights caused by the Defendant.

2.    This suit is authorized and instituted under the Age Discrimination Act.

3.    This is a suit authorized and instituted under 29 U.S.C. § 2617(a)(2), The Family and Medical Leave Act.

4. This suit is authorized and instituted under Title VII of the Act of Congress known as the "Civil Rights Act of 1964," as amended, the "Civil Rights Act of 1991;" 42 U.S.C. § 2000e, et seq. (Title VII).

5. This suit is authorized and instituted under 42 U.S.C. § 1981. This is a suit authorized and instituted under "Section 1981."

6. Plaintiff timely filed a charge of discrimination with the Equal Employment Opportunity Commission (EEOC) within 180 days of the last discriminatory act (Exhibit A).

7. Plaintiff further sued within ninety (90) days after receipt of the right-to-sue letter issued by the EEOC.

## II.   PARTIES

8. Plaintiff, Donna Woods, ("Plaintiff" or "Woods") is a resident of Birmingham, Jefferson County, and performed work for the Defendant in the counties composing the Northern District of Alabama Southern Division during the events of this case.  Thus, under 28 U.S.C. § 1391(b), venue for this action lies in the Southern Division.

9. At all times material to the complaint, Woods was over the age of 40.

10. Defendant HRPO Holdings Inc. formerly known as HP Hotel Management Inc. ("Defendant" or "HP") is a company registered and doing business

in the State of Alabama and has sufficient minimum contacts with the State of Alabama that it is subject to service of process in Alabama.

11.    Defendant Rhaglan Hospitality ("Defendant" or "Rhaglan") is a company registered and doing business in the State of Alabama and has sufficient minimum contacts with the State of Alabama that it is subject to service of process in Alabama.

12.    Each Defendant employed at least fifty (50) people for each working day during each of 20 or more calendar workweeks in the current or preceding calendar year. Defendant employed these fifty (50) employees within 75 miles of Plaintiff's worksite.

## III.  **FACTS**

13.    Plaintiff incorporates by reference and realleges each of the preceding paragraphs as if set out herein.

14.    Woods is African American colloquially referred to as "black".

15.    At the material times of this complaint, Woods was 62 years old.

16.    Woods was hired in June or July of 2021.

17.    Woods was employed to work in the kitchen at The Kelly which is managed by HP.

18. However, Woods was placed to work at the Redmont Hotel, also managed by HP.

19. At first, an entity named Rebel, managed the hotel.

20. Bryan Viccino (white male) was the Executive Chef making $87,000.00.

21. Torrence (Last name unknown) (black male) was Sioux Chef making $55,000.00.

22. Woods was the Executive Sioux Chef (a position over Torrence) making $45,000.00.

23. Woods performed most of the duties of Executive Chef as Brian Viccino did not do anything but sit at a computer all day.

24. In or around October, 2021, Rhaglan took over management of the Hotel. Everyone was fired except Woods and Richard Ray.

25. At that time, Woods was still Executive Sioux Chef making $45,000.00.

26. Richard Ray became Sioux Chef making $45,000.00.

27. Woods was over Richard Ray, but she was doing all of the work.

28. Woods was also performing the Executive Chef job duties as there was no one yet placed in that position.

29. On or about January 3, 2022, HP became management of the hotel.

30. Woods worked two jobs as many people do in the industry so she told them her availability was after 1:00 p.m.

31. Woods was placed on the morning shifts anyway.

32. HP hired a young girl named Latoya to work Woods' desired shift from 1:00 – 9:00 p.m.

33. The hotel did not do lunch service.

34. Latoya was frequently no-call, no show so she was not helpful.

35. Richard Ray would be scheduled in the morning.

36. Richard Ray would not show up at all, or if he did, he would just prep and go home without problems or discipline.

37. On the mornings Woods was scheduled, she attempted to show up, prep, then go home on a day that she was sick.

38. Woods was written up for this offense.

39. Woods was required to stay until midnight on a regular basis to clean the dishes.

40. Richard Ray was never required to stay nights even though he was scheduled on nights.

41. The night shift was busier than the morning shift.

42. Richard Ray's outside work schedule was being honored, but Woods' outside work schedule was not.

43.    Richard Ray did not even receive 50 hours of work per week.

44.    Woods complained of the disparate treatment and the need for help.

45.    In January of 2022, The Kelly finally opened.

46.    Woods was not transferred to The Kelly as promised.

47.    The Kelly was a new facility that had new equipment, a dishwasher, two line cooks, a Sioux Chef and an Executive Chef.

48.    Woods was specifically told not to go to the Kelly for supplies, and that they would send someone.

49.    From January 3, 2022, to the last week of April, 2022, Richard Ray began to be scheduled more hours.

50.    From January 3, 2022 to the last week of April, 2022, Woods was acting as Executive Chef scheduling, ordering, running night shift, ect.

51.    Woods was never paid for acting as Executive Chef which is a substantial difference in pay.

52.    The men were allowed to take off when they were sick.

53.    Woods was not allowed to take off when she had a doctor's note.

54.    Men in comparable or lower positions were allowed to do less work fo the same or greater pay than Woods received.

55.    The men in the kitchen were allowed to send out inferior food, but not disciplined.

56.     Woods was disciplined for sending out food that was alleged to be inferior.

57.     Woods repeatedly asked for help from Rebel, Rhaglan, and HP which were repeatedly denied.

58.     Woods complained to the General Manager of Rebel, Rhagland, and HP, Tonya Williams of the disparate treatment she received during her employment.

59.     Woods continued to be treated differently as she was still placed on the morning shift, and did not provide someone to help with all of the job duties Woods was performing.

60.     Woods complained to the General Managers John Henderson, the Assistant General Manager Karen Rogers, to Corporate Brian Berry, and to Food and Beverage Manager Colin (last name unknown) about the disparate treatment without any relief.

61.     Woods was told they could not afford a dishwasher even though the Redmont had plenty of business to cover the bills.

62.     Brian Berry called the employee's mother f***ers and shouted at them they would not do their jobs.

63.     Brian Berry was disrespectful to employees in front of customers./

64.     Woods had to pay for food to cover shifts out of her pocket.

65. Woods told Brian Berry and Karen Rogers she was interested in the Executive Chef position.

66. Woods was qualified for the position and was already performing the job duties of the position.

67. HP hired two white males for the Executive Chef position.

68. First, HP hired Tom Cholokis (white male) on or about March 15, 2022.

69. Second HP hired Doug Kuk (white male) in or around April, 2022.

70. The week of March 7, 2022, Woods was sick and had a doctor's note, but she was required to work anyway.

71. Richard Ray called off when he was scheduled and the restaurant was closed.

72. On or about March 12, 2022, Woods was not provided a break to use the bathroom because they were so busy.

73. On or about May 5, 2022, Woods was changed from salary to hourly worker.

74. Doug Kuk, Executive Chef was provided help when he requested a dishwasher and two cooks.

75. On or about June 29, 2022, Woods filed her first EEOC Charge against Rhaglan (420-2022-2613) and HP (420-2022-2614).

76.    After her charge of discrimination, Woods was excluded from management meetings, and experienced heightened scrutiny.

77.    Woods had always been invited to management meetings before this charge of discrimination.

78.    Woods was watched while she cooked in order to find something wrong with her performance.

79.    Woods injured her leg at work and her doctor placed her off work for one (1) week.

80.    When Woods returned from work, she had been taken off of direct deposit without notice causing her a delay in receiving her pay and use her earned money.

81.    On or about December 9, 2022, Woods was accused of burning a steak which was not burned.

82.    Woods was terminated on December 14, 2022.

83.    Woods was told the stated reason for her termination was the overcooked steak and her absences.

84.    All of Woods' absences were documented and excused by Wood's doctor and the last absences were related to her on the job injury.

85.    Woods only had one unexcused absence when she had a flat tire.

86.    Other employees who had more absences than Woods, who not complained of discrimination, were not disciplined or terminated.

87.    Woods was replaced by a male aged in his 20's.

88.    Low level black employees at The Kelly were treated less favorably than white employees on a regular basis.

89.    Black employees were treated as though they not welcome at The Kelly.

90.    On or about April 11, 2023, HP changed its name to HRPO Holdings, Inc.

## IV.  CLAIMS

## COUNT I- TITLE VII – RACE DISCRIMINATION – FAILURE TO HIRE/PROMOTE

91.    Plaintiff incorporates by reference and realleges each of the preceding paragraphs as if set out herein.

92.    Plaintiff is African American colloquially referred to as black

93.    Plaintiff was qualified for the position of Executive Chef as she was already performing the job duties of the position.

94.    Plaintiff applied for the  position on or about January of 2022.

95.    Defendant hired two white males for the positions available.

96. Defendant did not hire/promote Plaintiff for the Executive Chef position

97. Defendant did not place Woods at The Kelly as promised.

98. Defendant's Race was a motivating factor in Defendant's decision not to hire/promote Plaintiff.

99. Because of Defendant's discriminatory decision not to promote Woods, and not to place her at the Kelly were made in whole or in part because of race, Plaintiff has lost pay and continues to be damaged.

100. Defendant's actions in not promoting/hiring Plaintiff violated Title VII.

101. Because of Defendant's violation of Title VII, Plaintiff has been damaged, suffering loss of pay, benefits, and mental anguish.

## COUNT II- 42 U. S. C. § 1981 FAILURE TO HIRE/PROMOTE

102. Plaintiff incorporates by reference and realleges each of the preceding paragraphs as if set out herein.

103. Plaintiff is African American colloquially referred to as black

104. Plaintiff was qualified for the position of Executive Chef as she was already performing the job duties of the position.

105. Plaintiff applied for the  position on or about January of 2022.

106. Defendant hired two white males for the positions available.

107. Defendant did not hire/promote Plaintiff as Executive Chef.

108. Defendant did not place Woods at the Kelly as initially promised.

109. Defendant's decision to not promote Plaintiff or to place her at The Kelly was made, in whole or part, because of race in violation of 42 U. S. C. § 1981.

110. Because of Defendant's discriminatory decision made in whole or in part because of race, Plaintiff has lost pay and continues to be paid less.

111. Because of Defendant's violation of 42 U. S. C. § 1981, Plaintiff has been damaged, suffering loss of pay, benefits, and mental anguish.

## COUNT III -TITLE VII -SEX -FAILURE TO HIRE/PROMOTE

112. Plaintiff incorporates by reference and realleges each of the preceding paragraphs as if set out herein.

113. Plaintiff is female.

114. Plaintiff was qualified for the position of Executive Chef as she was already performing the job duties of the position.

115. Plaintiff applied for the  position on or about January of 2022.

116. Defendant hired two white males for the positions available.

117. Defendant did not hire/promote Plaintiff.

118. Plaintiff's sex was a motivating factor in Defendant's decision not to hire/promote Plaintiff.

119. Because of Defendant's discriminatory decision made in whole or in part because of sex, Plaintiff has lost pay and continues to be paid less.

120. Defendant's actions in not promoting/hiring Plaintiff violated Title VII.

121. Because of Defendant's violation of Title VII, Plaintiff has been damaged, suffering loss of pay, benefits, and mental anguish.

## COUNT IV- TITLE VII- SEX- DISPARATE TREATMENT

122. Plaintiff incorporates by reference and realleges each of the preceding paragraphs as if set out herein.

123. Plaintiff has established a convincing mosaic of direct and circumstantial evidence that she was treated differently because of her sex.

124. Plaintiff is female.

125. Plaintiff was treated differently than her male co-workers as follows:

    a. Male co-workers performing Executive Chef duties were paid Executive Chef pay when Woods was not;

    b. Male co-workers were allowed to show up, prep, then go home without discipline when Woods was not;

    c. Male co-workers were not required to stay and wash dishes until midnight after the dinner shift when Woods was;

d. Male co-workers were given favorable hours over Wood's hours than Woods;

e. Male co-workers were not changed to hourly when Woods was;

f. Male co-workers were given same or better pay for less job duties than Woods;

g. Male co-workers were allowed to take time off when sick when Woods was not;

h. Male co-workers outside work schedules were honored when Woods outside work schedule was not; and

i. Male co-workers were provided assistance in their job duties by hiring two cooks and a dishwasher for their shifts when Woods was not;

j. Male co-workers were provided a bathroom break when Woods was not;

k. Male co-workers were allowed to serve allegedly inferior food without discipline or write up when Woods was not;

l. Woods was replaced by a male when she was termianted;

m. Males were given position of Executive Chef when Woods was not; and

n. Males were given higher pay for the same or similar position to Woods when she was not.

126. Woods was treated differently *because* of her sex.

127. Because of Defendant's violation of Title VII, Plaintiff has been damaged, suffering loss of pay, benefits, and mental anguish.

## COUNT V- TITLE VII- RACE DISPARATE TREATMENT

128. Plaintiff incorporates by reference and realleges each of the preceding paragraphs as if set out herein.

129. Plaintiff has established a convincing mosaic of direct and circumstantial evidence that she was treated differently because of her sex.

130. Plaintiff is black.

131. Plaintiff was treated differently than her male co-workers as follows:

a. White co-workers performing Executive Chef duties were paid Executive Chef pay when Woods was not;

b. White co-workers were not required to stay and wash dishes until midnight after the dinner shift when Woods was;

c. White co-workers were given favorable hours over Wood's hours than Woods;

d. White co-workers were not changed to hourly when Woods was;

e. White co-workers were given same or better pay for less job duties than Woods;

f. White co-workers were allowed to take time off when sick when Woods was not;

g. White co-workers outside work schedules were honored when Woods outside work schedule was not; and

h. White co-workers were provided assistance in their job duties by hiring two cooks and a dishwasher for their shifts when Woods was not;

i. White co-workers were provided a bathroom break when Woods was not;

j. White co-workers were allowed to serve allegedly inferior food without discipline or write up when Woods was not;

k. White co-workers were placed at The Kelly when Woods was not;

l. White workers were given position of Executive Chef when Woods was not; and

m. White workers were given higher pay for the same or similar position to Woods when she was not.

132. Woods was treated differently *because* of her race.

133. Because of Defendant's violation of Title VII, Plaintiff has been damaged, suffering loss of pay, benefits, and mental anguish.

## COUNT VI- 1981-RACE DISPARATE TREATMENT

134. Plaintiff incorporates by reference and realleges each of the preceding paragraphs as if set out herein.

135. Plaintiff is black.

136. Plaintiff was treated differently than her male co-workers as follows:

   a. White co-workers performing Executive Chef duties were paid Executive Chef pay when Woods was not;

   b. White co-workers were not required to stay and wash dishes until midnight after the dinner shift when Woods was;

   c. White co-workers were given favorable hours over Wood's hours than Woods;

   d. White co-workers were not changed to hourly when Woods was;

   e. White co-workers were given same or better pay for less job duties than Woods;

   f. White co-workers were allowed to take time off when sick when Woods was not;

g. White co-workers outside work schedules were honored when Woods outside work schedule was not; and

h. White co-workers were provided assistance in their job duties by hiring two cooks and a dishwasher for their shifts when Woods was not;

i. White co-workers were provided a bathroom break when Woods was not;

j. White co-workers were allowed to serve allegedly inferior food without discipline or write up when Woods was not;

k. White co-workers were placed at The Kelly when Woods was not;

l. White workers were given position of Executive Chef when Woods was not; and

m. White workers were given higher pay for the same or similar position to Woods when she was not.

137. Woods was treated differently *because* of her race.

138. Because of Defendant's violation of 42 U.S.C. §1981, Plaintiff has been damaged, suffering loss of pay, benefits, and mental anguish.

## COUNT VII- TITLE VII – SEX- DISCHARGE

139.   Plaintiff incorporates by reference and realleges each of the preceding paragraphs as if set out herein.

140.   Plaintiff has established a convincing mosaic of direct and circumstantial evidence that she was terminated because she is female.

141.   Plaintiff is female.

142.   Plaintiff was qualified for her position as she was successfully performing her position.

143.   Defendant systematically treated males better than Woods throughout her employment.

144.   Defendant terminated Plaintiff's employment on or about December 14, 2022 .

145.   Woods was replaced by a male.

146.   Richard Ray engaged in the same or similar conduct as he sometimes didn't even show up for work and often left when he was scheduled to leave and sometimes served inferior food without repercussions and remained employed.

147.   Richard Ray is male.

148.   Wood's gender was a motivating factor in her termination.

149.   Because of Defendant's discriminatory decision made in whole or in part because of his race, Plaintiff has lost pay and continues to be paid less.

150. Defendant's actions in terminating Plaintiff's employment violated Title VII.

151. Because of Defendant's violation of Title VII, Plaintiff has been damaged, suffering loss of pay and benefits and emotional distress.

## COUNT VIII- TITLE VII – RACE- DISCHARGE

152. Plaintiff incorporates by reference and realleges each of the preceding paragraphs as if set out herein.

153. Plaintiff has established a convincing mosaic of direct and circumstantial evidence that she was terminated because she is black

154. Plaintiff is African American colloquially referred to as "black".

155. Plaintiff was qualified for her position as she was successfully performing her position.

156. Defendant systematically treated white employees better than Woods throughout her employment.

157. Defendant terminated Plaintiff's employment on or about December 14, 2022.

158. White employees engaged in the same or similar conduct as they were no-call and no show for work and sometimes served inferior food without repercussions and remained employed.

159. Wood's race was a motivating factor in her termination.

160. Because of Defendant's discriminatory decision made in whole or in part because of her race, Plaintiff has lost pay and continues to be paid less.

161. Defendant's actions in terminating Plaintiff's employment violated Title VII.

162. Because of Defendant's violation of Title VII, Plaintiff has been damaged, suffering loss of pay and benefits and emotional distress.

## COUNT IX- 42 U. S. C. § 1981 DISCHARGE

163. Plaintiff incorporates by reference and realleges each of the preceding paragraphs as if set out herein.

164. Plaintiff has established a convincing mosaic of direct and circumstantial evidence that she was terminated because she is black

165. Plaintiff is African American colloquially referred to as "black".

166. Plaintiff was qualified for her position as she was successfully performing her position.

167. Defendant systematically treated white employees better than Woods throughout her employment.

168. Defendant terminated Plaintiff's employment on or about December 14, 2022.

169. White employees engaged in the same or similar conduct as they were no-call and no show for work and sometimes served inferior food without repercussions and remained employed.

170. Because of Defendant's discriminatory decision made in whole or in part because of her race, Plaintiff has lost pay and continues to be paid less.

171. Defendant's actions in terminating Plaintiff's employment violated 42 U.S.C. 1981.

## COUNT X- TITLE VII -RETALIATION

172. Plaintiff incorporates by reference and realleges each of the preceding paragraphs as if set out herein.

173. Plaintiff was qualified for the position and able to perform the essential functions of the job.

174. Plaintiff repeatedly engaged in protected activities both internally and with the EEOC, when she reported differential treatment, pay, discrimination in hiring, ect. based on race and gender.

175. After she filed her EEOC charge, Woods was watched and scrutinized greater than prior to her charge.

176. On or about December 14, 2022, Defendant terminated Plaintiff's employment.

177.   But for Plaintiff's protected activity, Defendant would have retained Plaintiff in her position.

178.   Defendant violated Title VII by terminating Plaintiff for engaging in protected activity.

179.   Because of Defendant's violation of Title VII, Plaintiff has been damaged suffering loss of pay, benefits, and mental anguish.

## COUNT XI- 42 U. S. C. § 1981 RETALIATION

180.   Plaintiff incorporates by reference and realleges each of the preceding paragraphs as if set out herein.

181.   Plaintiff was qualified for the  position and able to perform the essential functions of the job.

182.   Plaintiff repeatedly engaged in protected activities both internally and with the EEOC, when she reported differential treatment, pay, discrimination in hiring, ect. based on race and gender.

183.   After Woods filed her EEOC Charge, she was scrutinized greater than prior to her charge.

184.   On or about December 14, 2022, terminated Plaintiff's employment.

185.   But for Plaintiff's protected activity she would not have been terminated.

186. Defendant violated the 42 U. S. C. § 1981 by terminating Plaintiff in whole or in part for engaging in protected activity.

187. Because of Defendant's violation of the 42 U. S. C. § 1981, Plaintiff has been damaged suffering loss of pay, benefits, and mental anguish.

## COUNT XII - FMLA RETALIATION

188. Plaintiff incorporates by reference and realleges each of the preceding paragraphs as if set out herein.

189. During the 12-month period before Wood's injury, Defendant employed Plaintiff for at least 1,250 hours of service.

190. Defendant employs fifty (50) or more persons for each working day during each of the 20 or more calendar workweeks in the current or preceding calendar year before Wood's injury .

191. Plaintiff provided notice of unforeseeable FMLA leave due to her injury to her employe  as soon as practicable due to her medical emergency.

192. While Defendant allowed Woods to be off for one week due to her injury, Defendant willfully failed to provide Plaintiff with a Notice of Eligibility and Rights and Responsibilities form.

193. Defendant willfully failed to provide Plaintiff with an FMLA Designation Notice form.

194. Defendant willfully failed to provide Plaintiff with an FMLA Certification of Health Care Provider for Employee's Serious Health Condition form.

195. Defendant willfully terminated Plaintiff's employment on December 14, 2022, citing her absences as a reason for her termination.

196. Defendant's employees knew that Plaintiff suffered from FMLA qualifying conditions for which he/she needed one week off per Woods' doctor.

197. Because Defendant terminated Woods in whole or in part because of her FMLA qualifying event.

198. Because of Defendant's retaliatory termination decision in violation of the FMLA, Plaintiff has been damaged, suffering loss of pay and benefits.

## COUNT XIII- AGE DISCRIMINATION

199. Plaintiff incorporates by reference and realleges each of the preceding paragraphs as if set out herein.

200. At all material times of the complaint, Woods was 62 years old.

201. Woods requested to be off until 1:00 p.m. due to her second job which said request was denied.

202. Latoya a much younger employee, was given her preference of a work schedule and was scheduled from 1:00 pm to 9:00 pm.

203. Woods was terminated and replaced by a male in his 20's.

204. Because Defendant treated Woods differently and terminated her due to her age, it violated the Age Discrimination Act.

205. Because of Defendant's age discrimination decision in violation of the ADEA Plaintiff has been damaged, suffering loss of pay and benefits.

## V.   PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully prays for the following relief:

A.   Grant Plaintiff a permanent injunction enjoining the Defendant, its agents, successors, employees, attorneys and those acting with the Defendant and at the Defendant's request from continuing to violate the terms of the Age Discrimination in Employment Act.

B.   Grant Plaintiff a permanent injunction enjoining the Defendant, its agents, successors, employees, attorneys and those acting with the Defendant and at the Defendant's request from continuing to violate the terms of Title VII of the Civil Rights Act of 1964;

C.   Grant Plaintiff a permanent injunction enjoining the Defendant, its agents, successors, employees, attorneys and those acting with the Defendant and at the Defendant's request from continuing to violate the terms of Section 1981;

D.   Grant Plaintiff a permanent injunction enjoining the Defendant, its agents, successors, employees, attorneys and those acting with the Defendant and at

the Defendant's request from continuing to violate the terms of the Family and Medical Leave Act;

E.   Enter an Order requiring the Defendant to make Plaintiff whole by awarding reinstatement to the position she would have had, had she not been terminated;

F.   Award back pay (with prejudgment and post judgment interest), with employment benefits, front pay, liquidated damages; compensatory damages, special damages; punitive damages nominal damages;

G.   Attorneys' fees and costs;

H.   Plaintiff requests that the Court award Plaintiff equitable relief as provided by law; and,

I.   Any different or additional relief as determined by the Court to which Plaintiff is entitled.

**PLAINTIFF DEMANDS A TRIAL BY STRUCK JURY.**

Patricia A. Gill

**OF COUNSEL:**

The Workers' Firm
2 20th Street North, Suite 900
Birmingham, Alabama 35205
T: 205.329-6392
trish@theworkersfirm.com

## PLEASE SERVE DEFENDANTS AS FOLLOWS

HRPO Holdings, Inc. formerly known as HP Hotel Management Inc.
Registered Agent, James Michael Hines
2426 Independence Drive
Birmingham, AL 35209

Rhaglan Hospitality LLC
Registered Agent James W. Lewis
2101 5th Avenue North
Birmingham, AL 35203